UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

CRIMINAL NO. 05-30-DCR
CIVIL NO. 06-407-DCR

UNITED STATES OF AMERICA                                    PLAINTIFF


VS:                              RECOMMENDED DISPOSITION


JAMES HENRY DAVIDSON, JR.                                   DEFENDANT

* * * * * * * *

This matter is before the Court on a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 by *pro se* Defendant James Henry Davidson, Jr. *See* DE# 787. The District Court, which sentenced Defendant, referred the matter to the undersigned for a recommended decision. Based on an evaluation of the record, including Defendant's petition, the response in opposition by the United States, and Defendant's reply, the Court ordered a limited evidentiary hearing before resolving the § 2255 motion. *See* DE## 787, 816, 827, and 846. Having conducted the hearing, the matter is ripe for decision. *See* DE# 860. For the reasons stated herein, the Court recommends that Defendant's § 2255 motion to vacate, set aside, or correct sentence be DENIED.

## I.  Factual Background [1]

Defendant was a member of a vast Clay County, Kentucky, drug-distribution network, referred to by authorities as the "Kenny Day organization." For his part in the conspiracy, Davidson primarily stored large amounts of marijuana in a secret room constructed underneath his garage. *See*

---

[1]   This summary substantially relies on Defendant's Motion for Rearraignment, *see* DE #528, and his statements during rearraignment.

1

DE# 528, Motion for Rearraignment at 1. The property that housed the secret storage room was located in Clay County and situated within 1000 feet of an elementary school. Defendant owned the property. *See id.*

The room was well-concealed and outfitted with freezers. Davidson and his confederates installed the freezers for the intended purpose of storing marijuana. *See id.* at 1-2. Between August of 2004 and July 15, 2005, Defendant admits that he stored over 1000 kilograms of marijuana in the hidden room. *See id.* at 2. In exchange for his services, Defendant received $1,000 per week from Kenny Day. *See id.* at 1.

The marijuana initially arrived at Kenny Day's pawn shop from various suppliers. At times, Day would direct Defendant to come to the pawn shop, pick up the marijuana, and take it to the storage room. On other occasions, Defendant's coconspirators would bring the marijuana directly to Davidson's property for storage. Once it arrived, the marijuana would normally remain at Defendant's until Kenny Day arranged for a buyer. *See id.* at 2.

Davidson admitted that the marijuana stored on his property was removed and distributed on August 26, 2004, September 21, 2004, November 24, 2004, January 13, 2005, and April 27, 2005. Defendant further admitted that, between April and July of 2005, he and other members of the organization possessed 100+ kilograms of marijuana for the intended and specific purpose of re-selling to distributors. *See id.*

Proceeds from these and other distributions were used to pay suppliers for the marijuana stored on Defendant's property. Davidson knew these proceeds traveled across state lines.

2

Defendant and the organization also used the proceeds to purchase real and personal property for the purpose of promoting, disguising, and carrying on their illegal drug trafficking. *See id*.

In addition to the illicit drug trade, Davidson conspired to corruptly influence an official proceeding by participating in a scheme to reduce a coconspirator's bond. Defendant also violated federal law by possessing a firearm while subject to a qualifying domestic violence order. Authorities discovered the firearm on Defendant's person at the time of his arrest. Davidson also further agreed that he possessed a large number of firearms located in his house. *See id*. at 3.

On the basis of these suspected activities, the Grand Jury sitting in the Eastern District of Kentucky issued a forty-three count indictment against Defendant and his conspirators. *See* DE# 339, Third Superceding Indictment. Defendant appeared in fifteen counts. Those counts alleged that Davidson: conspired with others to possess with intent to distribute 1000 kilograms of marijuana (Count 2); engaged in money laundering in connection with the proceeds from the illegal drug trafficking (Count 4); conspired with others to influence an official proceeding (Count 5); knowingly and intentionally distributed marijuana on August 26, 2004, September 21, 2004, January 13, 2005, April 9, 2005, and April 27, 2005 (Counts 7, 8, 15, 18, and 20); knowingly and intentionally distributed marijuana within 1000 feet of a school on November 24, 2004 (Count 13); knowingly possessed with intent to distribute 100+ kilograms of marijuana on July 15, 2005 (Count 22); and possessed twenty-nine firearms while subject to a DVO in violation of federal law (Count 34). *See id*. The indictment also sought the forfeiture of said weapons (Count 43), and the forfeiture of property and proceeds related to Defendant's illegal drug trafficking (Counts 35, 36, and 38). *See id*.

3

After initially pleading not guilty, Defendant moved on the eve of trial to change his plea as to all counts.[2]  *See* DE #528, Motion for Rearraignment at 1.  Consequently, the District Court rearraigned Defendant on November 14, 2005, the day before the scheduled trial date.  The District Court complied with all Rule 11 obligations.  The Court reviewed the charges, explained the rights that Defendant waived by pleading guilty, addressed the statutory penalties, and discussed the non-binding sentencing guidelines and the § 3553 factors.  *See* DE# 808, Rearraignment at 10-14, 16-25.  Defendant represented that he understood the charges against him and the rights he waived by pleading guilty.  Davidson also agreed that he was not forced, threatened, or induced into his guilty plea by coercion or undisclosed promises.  Davidson represented that he was satisfied with counsel, and he admitted to the factual basis underlying the charges.  *See id*. at 8-10, 17-18, 25-29.

Defendant actively participated in the rearraignment.  He coherently responded to the inquiries by the District Court, asked questions, and actively conferred with counsel.  *See id*. at 8, 12, 15, 25-29.  Defendant ultimately pled guilty to all fifteen counts.  *See id*. at 29.  The Court found that Davidson was "fully competent and capable of entering an informed plea," and that his guilty plea was "knowing and voluntary."  *See id*.

The District Court conducted the sentencing hearing on February 22, 2006.  The sentencing guidelines produced a range of 151 to 188 months,[3] and Count 2 imposed a mandatory minimum

---

[2]

Defendant moved to change his plea to guilty without the benefit of a written plea agreement. *See* DE# 808, Rearraignment.  According to his representations at rearraignment, Davidson understood that he did not have a written agreement with the United States related to his guilty plea. *See id*. at 8-9.

[3]

Because it had the highest base offense level, the money laundering charge in Count 4 determined Defendant's guideline range. *See* DE# 809, Sentencing Hearing at 5.  The base offense level for Count 4 was 34.  The District Court assessed a two level increase pursuant to § 2S1.1.  That

4

sentence of 120 months.  *See* DE# 809, Sentencing Hearing at 6.  Defendant requested a sentence below the guideline range and near the statutory minimum of 120 months.  Counsel emphasized Davidson's limited reading and writing abilities, health problems, prior unwillingness to "turn" on his friends, and his self-styled minor role in the conspiracy as a mere "warehousemen."  *See id*. at 8-18.  The United States believed that Defendant significantly underestimated his role in the conspiracy.  The Government noted that Davidson also distributed marijuana, received substantial sums of money and property for his services, maintained a "sophisticated" storage facility that was situated within 1000 feet of an elementary school, unlawfully possessed a large number of firearms, and attempted to flee with a loaded weapon when authorities executed a search warrant on his property.  *See id*. at 18-25.  After hearing arguments and applying the § 3553(a) sentencing factors, the District Court imposed 188 months of imprisonment.  *See id*. at 25-29.

Defendant did not appeal the conviction or sentence.  In the instant § 2255 motion, however, Davidson alleges that trial counsel failed to follow his express instructions to file an appeal.  *See* DE# 787, § 2255 Motion at "Ground Two;" DE# 787, Supporting Memo at 9-11; DE# 827, Reply at 7; DE# 828, Davidson Affidavit ¶ 2.  CJA counsel Hon. Eric Edwards represented Davidson in the criminal proceedings.  Edwards maintains that Defendant did not want or request direct review.  *See* DE# 816-2, Edwards Affidavit at 2.

Because a sharp factual dispute existed as to Davidson's appeal instructions, the Court ordered and conducted a limited evidentiary hearing to resolve the contested question.  *See* DE# 846, Order Granting Limited Evidentiary Hearing at 4, 6; DE# 860.  The Court appointed Hon. Jason

---

resulted in an adjusted offense level of 36.  *See id*.  After subtracting two levels for Defendant's acceptance of responsibility, the total offense level was 34.  *See id*. at 6.  Defendant had zero criminal history points, and thus fell within criminal history category I.  *See id*.

Kincer to represent Defendant at the hearing. *See* DE# 851. The matter now being submitted, the Court considers the entirety of the §2255 motion.

## II.  Issues Presented

In the § 2255 petition, Defendant claims that he did not knowingly and voluntarily enter a guilty plea because of coercion, lack of competency, and ineffective assistance of counsel.  In particular, Davidson emphasizes counsel's failure to investigate his competency and raise that issue before the District Court.

The petition also asserts that trial counsel provided ineffective assistance by failing to file an appeal as instructed. The Court extensively addressed the issue, which has significant procedural default implications, at the June 2007 evidentiary hearing.[4]

Last, Defendant contends that his sentence is unreasonable and in violation of *Booker v. United States*, 543 U.S. 220 (2005) because: a) the alleged quantity of drugs was not proven; b) Davidson did not admit to and is not guilty of the charged weapons and money laundering offenses; c) the "counts were not grouped properly" causing an "inflated sentence;" and d) Davidson deserved a "safety valve" adjustment and "minor role" reduction.

## III.  Standard of Review

Under 28 U.S.C. § 2255, a federal prisoner may seek relief because a sentence was imposed in violation of the Constitution or federal law, the federal court lacked jurisdiction to impose such sentence, or the sentence was in excess of the maximum authorized by law. *See* 28 U.S.C. § 2255.

---

[4]

In his reply, Davidson requested an evidentiary hearing to consider whether counsel neglected Defendant's express instructions to appeal.  The reply also sought an evidentiary hearing concerning Defendant's prior competency to enter a plea. *See* DE# 827, Reply at 8.  However, the § 2255 motion itself did not request an evidentiary hearing as to either claim.   The Court granted a hearing only as to the former matter.

To prevail on a § 2255 motion alleging constitutional error, the petitioner must establish that the error had a "substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 113 S.Ct. 1710, 1721-22 (1993)). To prevail on a motion alleging non-constitutional error, the petitioner must establish a "fundamental defect which inherently results in a complete miscarriage of justice or an error so egregious that it amounts to a violation of due process." *Watson*, 165 F.3d at 488 (citing *Hill v. United States*, 82 S.Ct. 468, 471 (1962)). The court is cognizant of Defendant's *pro se* status as to all written matters.[5]

## IV. Analysis

### A. Procedural Matters

There are no procedural defects at issue relating to successiveness, timeliness, or jurisdiction. However, the United States asserts that Defendant defaulted his § 2255 claims by failing to appeal. *See United States v. Frady*, 102 S.Ct. 1584, 1593 (1982)("[A] collateral challenge may not do service for an appeal."); *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003)("Section 2255 is not a substitute for a direct appeal.").[6] The Court may review Defendant's defaulted claims only if Defendant demonstrates either: i) "cause" for failing to raise an issue on direct appeal, and "actual

---

[5]

The *pro se* nature of the habeas petition results in a comparatively lenient construction by the Court. *See Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985) (holding that "allegations of a pro se habeas petition, 'though vague and conclusory, are entitled to a liberal construction'" including "active interpretation" toward encompassing an allegation stating "federal relief").

[6]

This procedural default rule does not apply to ineffective assistance of counsel claims, which generally are not cognizable on direct appeal. *See Massaro v. United States*, 123 S.Ct. 1690, 1694 (2003); *United States v. Combs*, 369 F.3d 925, 940 (6th Cir. 2004). Thus, even if the default rule applies in this case, the Court would reach Defendant's ineffective assistance claims.

7

prejudice," or ii) that he is "actually innocent." *See Bousley v. United States*, 118 S.Ct. 1604, 1611 (1998).

Here, Davidson candidly admits his guilt, and therefore he cannot establish actual innocence. *See* DE# 787, § 2255 Supporting Memo at 15 ("Defendant Davidson does *not* maintain that he is innocent.")(emphasis in original). To overcome the procedural default rule in this case, Defendant must demonstrate cause and prejudice. Even though the United States, in its response, addressed the default issue and the cause and prejudice exception, Defendant provides no specific cause and prejudice analysis in reply.

However, Davidson does allege that trial counsel neglected to notice an appeal as instructed. *See Ratliff v. United States*, 999 F.2d 1023, 1026 (6th Cir. 1993)(finding allegations by *pro se* litigant that he asked counsel to appeal "bear directly on the issue of cause and prejudice" and must be "construed liberally"). If proven as alleged, counsel's inaction would constitute ineffective assistance, which is sufficient to show "cause." *See Roe v. Flores-Ortega*, 120 S.Ct. 1029, 1035 (2000) (citing *Rodriquez v. United States*, 89 S.Ct. 1715 (1969)); *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998); *Ratliff*, 999 F.2d at 1026. Moreover, courts **presume** prejudice in this context. *See Roe*, 102 S.Ct. at 1038; *Ludwig*, 162 F.3d at 459 ("[F]ailure to perfect a direct appeal, in derogation of a defendant's actual request, is a *per se* violation of the Sixth Amendment."). Consequently, Defendant's allegations, if true, would satisfy the cause and prejudice exception. *See United States v. Chatman*, 2005 WL 3277989, at *2 (W.D. Mich. Dec. 2, 2005)("When . . . counsel ignor[es] an express instruction to appeal, that failure constitutes a sufficient showing of 'cause' and no showing of prejudice is required since prejudice is presumed even if the appeal issue is legally frivolous."); *see also Ratliff*, 999 F.3d at 1026. Under applicable law, if Attorney Edwards failed

8

to file an appeal as specifically instructed, Defendant would be entitled to §2255 relief–namely, a delayed appeal irrespective of likelihood of success on the merits.  *See Roe*, 120 S.Ct. at 1035; *Peguero v. United States*, 119 S.Ct. 961, 965 (1999); *Rodriguez*, 89 S.Ct. at 1717-18; *Regalado*, 334 F.3d at 524-25.  If, on the other hand, counsel complied with Defendant's instruction not to appeal, after any required consultation, the putative failure to appeal will disappear as a basis for relief and also will preclude review of Davidson's procedurally-defaulted theories.

In the § 2255 Supporting Memo, Defendant claimed that he "requested an appeal, and counsel failed to so proceed."  *See* DE# 787-2, § 2255 Supporting Memo at 11.  The reply added that Davidson "did want a direct appeal, but did not want Attorney Edwards to do the appeal."  *See* DE# 827, Reply at 7; *see also* DE #846 Order Granting Limited Evidentiary Hearing at 2-3 (cataloguing allegations).  Davidson's affidavit explained:

> I requested that an appeal be started and I asked Mr. Edwards to put in the papers to obtain for me a new attorney, because I had heard it was bad to use the same lawyer on appeal, especially since I was not satisfied with him during the plea and sentencing.

*See* DE# 828, Davidson Affidavit ¶ 2.  Davidson additionally stated in the affidavit that he "always wanted to appeal."  *See id*. ¶ 3.

In its response, the United States supplied an opposing affidavit by Defendant's trial counsel, Hon. Eric Edwards.  Edwards stated that he discussed the possibility of an appeal with Davidson both before and after sentencing, but Defendant replied in each instance that "he would just do his

time." *See* DE# 816-2, Edwards Affidavit at 2. According to Edwards's affidavit, Defendant did not want to appeal, and in fact affirmatively determined not to appeal.[7] *See id*.

Because the sworn affidavits conflicted on this key issue, the Court ordered an evidentiary hearing. *See* DE, #846 Order Granting Limited Evidentiary Hearing. As the movant and procedural-default opponent, Defendant had the burden of proving his factual contentions by a preponderance of the evidence. *See United States v. Maberry*, 1993 WL 339916, at *3 (D. Kan. Aug. 24, 1993)(conducting hearing to decide "whether counsel advised client of his right to appeal and whether counsel perfected an appeal if that was his client's wish") (citing *Wright v. United States*, 624 F.2d 557 (5th Cir. 1980)). Both Defendant and Edwards testified.

At the hearing, Davidson struggled to provide a clear and consistent account of events. On direct examination, Davidson initially stated:

> [T]he day they sentenced me to 188 months, I told [Edwards] I wanted to have it appealed and he told me that he would be over to the jail in a couple of days. . . . He never come. . . . I thought his wife was sick. It goes three or four days, he still don't come. And I kept trying to call him. They would not accept no call from the jail. . . . [T]hree or four days before I left [the Laurel County Jail to the Lexington Medical Center] I got a letter through the mail that I never had no appeal coming.

*See* DE# 864, Evidentiary Hearing at 8-9.

Defendant testified that he was in the courtroom when he asked Edwards to file the appeal, but he explained that no one else could have overheard the request. *See id*. at 10-11. According to Defendant, neither Edwards or a member of his staff visited Davidson after the hearing. *See id*. at

---

[7]

Because he feared Defendant would regret the decision, Edwards also explained that he contacted Davidson's sister, Irene, who confirmed that Davidson did not want to pursue an appeal. *See* DE# 816-2, Edwards Affidavit at 2.

10

10 ("Q: [A]fter your sentencing you never saw Eric Edwards again? A: Never have until today.  Q: Did he send anyone to the jail?  A: No.  Nobody never come to the jail.").  After two days had passed, Davidson claimed that he unsuccessfully called Edwards's law office "[s]ix, seven, eight times a day."  *See id*.

On cross examination, Davidson quickly equivocated as to the time and place of his appeal request.  Defendant was "not for sure" and could not "remember" whether he was in the courtroom or a holding cell when he instructed Edwards to file an appeal.  *See id*. at 12 ("Q: And where were you in the courtroom when you had that conversation, Mr. Davidson?  A: I'm not for sure if it was - - I never did talk to Eric but one time down in a room . . . .  I don't know - - I can't remember whether it was in the courtroom right there when we started out, or it might have been he - - that might have been the day I talked to him downstairs.  I do not know.  I can't remember that day for sure."); *see also id*. at 44.

Davidson displayed similar uncertainty concerning the exact day that he directed Edwards to file an appeal.  *See id*. at 13-14 ("Q: You're pretty sure it was as you were heading out of the courtroom?  A: I'm pretty sure it was.  No, I'm not positive which day. . . .  Q: Well, did you have a conversation with him in the holding cell after the sentence?  A: I had a conversation with him one day that I been over to the court.  I don't know whether it was that day or the day before that, the day the other time.  I do not know that. . . .  Q: My question is, did you have a conversation with him in the holding cell after the sentencing?  A: I don't know whether it was that day or not.  Like I say, I ain't going to tell you it was 'cause I don't know for sure.").

Davidson's testimony also appeared to contradict his affidavit.  Notably, Defendant testified that he "might have told" Edwards, at some point, that he "wanted to get [the case] over with" and

would "accept" the District Court's sentence.  *See id*. at 26.  In the affidavit, however, Defendant

unambiguously claimed that he "*always* wanted to appeal."  *See* DE# 828, Davidson Affidavit ¶ 3

(emphasis added).  Similarly, Defendant's testimony indicates that he requested different appellate

counsel "one night" when Edwards visited the jail, which by his own account must have occurred

before the sentencing hearing and before Davidson ever instructed Edwards to file an appeal.  *See*

Evidentiary Hearing at 15, 18-19, 36.  The affidavit, on the other hand, suggests that Davidson based

his decision to obtain new counsel, in part, on the sentence that he received, and that Davidson

requested Edwards to notice an appeal and to appoint new counsel **after** the sentencing hearing.[8]

*See* Davidson Affidavit ¶ 2 ("I requested that an appeal be started and I asked Mr. Edwards to put

in the papers to obtain for me a new attorney, because I had heard it was bad to use the same lawyer

on appeal, especially *since I was not satisfied with him during the plea and sentencing*.")(emphasis

added).  The sequence is nonsensical based on Davidson's testimonial description of the actual

chronology of interaction between him and Edwards.

Edwards, by comparison, provided a detailed and coherent account.  He stated that he had

multiple conversations with Defendant, prior to the sentencing hearing, concerning the possible

sentence and potential appeal.  *See* Evidentiary Hearing at 63-64.  Edwards explained that he

routinely discusses appeal in advance of the sentencing hearing because it is easier to withdraw and

appoint new appellate counsel if necessary at that point.  *See id*.  According to Edwards, Davidson

never indicated that he wanted an appeal or to have new counsel appointed during these pre-

---

[8]

At the evidentiary hearing, defense counsel attributed the apparent inconsistencies between
Davidson's testimony and affidavit to Defendant's "limited ability" to connect concepts and "time
frames," and Defendant's reliance on a "jailhouse lawyer who may or may not be educated . . . in
the law."  *See* Evidentiary Hearing at 94-95.  However, Davidson testified that he reviewed the
affidavit and understood the document.  *See id*. at 51-52.

sentencing conversations.  *See id.* at 65-66, 71-72, 78-79; *see also* Edwards Affidavit at 2.  Instead, Edwards's affidavit and testimony reflect that Davidson had resolved to "do his time."  *See* Hearing at 63, 78-79; Edwards Affidavit at 2.  Even Davidson acknowledged that he may have expressed such resignation to Edwards at the beginning of the case.  *See* Evidentiary Hearing at 26.

After the sentencing hearing, Edwards confirmed that he conferred with Davidson in a holding cell.  *See id.* at 61-62, 65.  Edwards explained that he discussed the actual sentence imposed, confirmed that Davidson had the right to appeal, but advised him that the sentence would be presumed reasonable since it was within the guideline range.  *See id.* at 61-62.   According to Edwards, Defendant expressed no desire to appeal after the sentencing hearing and indeed affirmatively communicated  that he did not want to appeal.  *See id.* at 65-66, 88.

Edwards further denied advising Davidson that he would visit Defendant "in a couple of days" after the hearing.  *See id.* at 77-78.  He likewise denied receiving multiple telephone calls from Davidson.  *See id.* at 73-74.  As a matter of practice, Edwards testified that based on cost his law office does not accept collect calls from inmates if Edwards is absent.  *See id.* at 74.  However, Edwards explained that he instructs his staff to advise him of such attempted telephone calls.  *See id.*  In this case, Edwards stated that he received no messages from staff indicating multiple (or any) missed telephone calls from Davidson.[9]  *See id.* at 75.

---

[9]

As stated in the affidavit, Edwards also testified that he communicated with Defendant's sister Irene after Defendant's sentencing, and that she confirmed that Davidson did not wish to appeal.  *See* Evidentiary Hearing at 66-67. Edwards's report of Irene's confirmation arguably is hearsay, but Defendant lodged no objection.  The correspondence in the record tends to confirm that Edwards at least acted consistently with Irene having verified that Davidson wanted no appeal, suggesting a non-hearsay avenue.  *See* DE# 859 (Exhibits 3 and 4).
Davidson's reply did address the reference to Irene in Edwards's affidavit.  He stated:

It is interesting that Attorney Edwards uses the Defendant's sister,

The Court credits Edwards's testimony on this record.  Defendant's testimony and affidavit are painfully vague and, in some key  respects, inconsistent.  Davidson also displayed factual uncertainty at the hearing.  He could not confidently relate pivotal information–in a swearing match–regarding when or where he instructed counsel to file the appeal.  Edwards, by comparison, provided a detailed and coherent account that complimented the statements in his affidavit.  Edwards also described regular practices he followed with respect to discussion and implementation of appeal rights.[10]  Further, the contemporaneous documentation confirms Edwards's version of events, including his clear understanding that Davidson wanted no appeal and Davidson's unmistakable awareness that he had only ten days to appeal and could have contacted the clerk if Edwards truly were acting unresponsively or disobediently.[11]  As such, the Court finds, as a fact, that Defendant never instructed Edwards to appeal, but instead "affirmatively communicate[d]" to Edwards, both before and after the sentencing hearing, that he did not want to appeal.  *See id*. at 88.  The Court's disposition conclusively establishes that, as to this issue, no "cause" and "prejudice" exists.  *See*

---

Irene, as a witness that supposedly relayed the Defendant's desire that he "did not want to pursue an appeal."  At an evidentiary hearing, the Defendant will provide evidence that the sister made no such statement and that she still feels threatened by the government.

*See* DE# 827, Reply at 7.  Despite Davidson's promises, Irene did not testify at the hearing.

[10]

The Court notes that a signed waiver would have assisted in resolving the factual issue.

[11]

As a matter of credibility, the Court must note Defendant's sizable incentive concerning proof that Edwards disobeyed appeal instructions.  On the other hand, Edwards, who is an experienced criminal defense attorney, demonstrated that appeals and replacement of trial counsel are normal and customary parts of a defense practice.  Edwards showed no reason to suspect he'd have been antagonistic to an appeal or replacement request by Defendant, and Edwards showed no obvious testimonial bias at the hearing.

14

*Regalado v. United States*, 334 F.3d 520, 524-25 (6th Cir. 2003)(finding ineffective assistance only where a lawyer fails to file an appeal "when specifically instructed to do so"); *see also* DE #846, Order Granting Limited Evidentiary Hearing at 4-5 (discussing standards in Sixth Circuit, including *Spence v. United States*, 68 Fed. Appx. 669, 671 (6th Cir. 2003), requiring that attorney have violated express instruction in order to warrant relief).

Furthermore, Defendant has failed to present any alternative theories of cause and prejudice. Because Defendant did not appeal (and in the absence of cause and prejudice or actual innocence), the procedural default rule applies, foreclosing most of Davidson's § 2255 claims. *See Frady*, 102 S.Ct. at 1593; *Bousley*, 118 S.Ct. at 1611. The Court, however, reaches Defendant's ineffective assistance of counsel claims, since those arguments are excepted from the default rule. *See Massaro v. United States*, 123 S.Ct. 1690, 1694 (2003); *United States v. Combs*, 369 F.3d 925, 940 (6th Cir. 2004). Below, the Court considers whether trial counsel provided ineffective assistance by not investigating Defendant's competency to enter a plea and by allegedly pressuring Davidson into pleading guilty.[12] Defendant defaulted the additional arguments that allege plea invalidity or sentencing errors.

### B. Substantive Issues

#### Counsel's Failure to Investigate and Argue Defendant's Incompetency

Whether defense counsel's failure to pursue a competency hearing was professionally unreasonable is measured by the familiar standard in *Strickland v. Washington*. *See Cox v.*

---

[12]

Because the Court rejects, as a factual matter, Davidson's allegation that counsel failed to notice Defendant's appeal as instructed, the Court will not revisit that ineffective assistance issue. Also, an alternative substantive analysis of the defaulted claims would not apply in this scenario because of the presumed prejudice, as to a successful claimant, in the *Regalado* context.

*Compton*, 2000 WL 84458, at *2 (6th Cir. Jan. 12, 2000); *Haeberlin v. Sparkman*, 1995 WL 750543, at *3 (6th Cir. Dec. 18, 1995).  Under *Strickland*, a defendant must show that counsel's performance was constitutionally deficient and prejudicial.  *See Strickland*, 104 S.Ct. 2052, 2064 (1984); *Kinnard v. United States*, 313 F.3d 933, 935 (6th Cir. 2002).  The first prong requires a showing that counsel's representation fell below an objective standard of reasonableness.  *See Strickland*, 104 S.Ct. at 2064.  This standard is "highly deferential," and there is a "strong presumption" that counsel rendered adequate assistance.  *See id.* at 2065. Under the second prong, a defendant must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *See id.* at 2068.  A reasonable probability is one sufficient to undermine confidence in the outcome.  *See id.*

In this case, Defendant contends that the following required a competency inquiry: Davidson has only an eighth grade education, limited reading and writing skills, and "lacks comprehensive abilities of a complex nature."  Moreover, Defendant argues that such limitations conclusively establish that he was not competent to enter a plea.  Consequently, counsel's failure to investigate and pursue a formal competency examination was, to Defendant, professionally unreasonable and prejudicial.  Because counsel provided ineffective assistance in this regard, Defendant concludes that he unknowingly and involuntarily entered his guilty plea.

Defendant's argument is not persuasive, on this clear record.  The argument and facts presented satisfy neither prong under the *Strickland* standard.

First, the District Court specifically found at rearraignment that Defendant was competent to enter a plea.  *See* DE# 808, Rearraignment at 29.  The Sixth Circuit has indicated that such a determination by the District Court "precludes a finding that the defendant's counsel was ineffective

for not pursuing the competency issue." *See Devine v. Commonwealth*, 1999 WL 551400, at *3 (6th Cir. July 20, 1999)("This court has previously inferred that a finding that a defendant was competent to enter a plea agreement precludes a finding that the defendant's counsel was ineffective for not pursing the competency issue."); *see also Ludwig*, 162 F.3d at 459 (agreeing there was no ineffective assistance of counsel for failing to pursue competency issue when the petitioner was determined to be competent to enter a plea). Thus, the District Court's prior finding strongly suggests–if not establishes–that counsel did not act unreasonably by neglecting to pursue a competency hearing.

Irrespective of the District Court's determination, Defendant's allegations do not demonstrate that he was actually or even arguably incompetent. The test for competency to enter a guilty plea is whether the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding–and whether he has a rational as well as a factual understanding of the proceedings against him." *Williams v. Bordenkircher*, 696 F.2d 464, 466 (6th Cir. 1983)(citing *Dusky v. United States*, 80 S.Ct. 788, 789 (1960)).

Under this standard, Defendant's stated level of cognitive function and limited education generally would be considered insufficient evidence of incompetency by federal courts. *See Sparkman*,1995 WL 750543, at *3 ("[Defendant] alleges that he suffers from Phenylketonuria (PKU), has an I.Q. less than 55, and operates on a third grade level. Even if true, these allegations would be insufficient to show [that defendant's] counsel was constitutionally required to request a competency examination."); *Cobbs v. McDonough*, 2006 WL 2092381, at *12 (N.D. Fla. July 26, 2006)("[If] counsel was aware of petitioner's learning disability, low IQ, and minimal education, these factors alone would not have provided a basis for counsel to question petitioner's competence."); *see also Medina v. Singletary*, 59 F.3d 1095, 1107 (11th Cir. 1995)("[N]either low

intelligence [or] mental deficiency . . . can be equated with mental incompetence."); *Nguyen v. Reynolds*, 131 F.3d 1340, 1346 (10th Cir. 1997) (same); *Lyons v. Luebbers*, 403 F.3d 585, 593 (8th Cir. 2005)(same); *Eddmonds v. Peters*, 93 F.3d 1307, 1314 (7th Cir. 1996)(same); *Walton v. Angelone*, 321 F.3d 442, 460 (4th Cir. 2003)(same).

Undoubtedly, a person lacking the aptitude of a high school graduate is still capable of understanding crime and punishment and the consequences that flow from unlawful conduct. *See Jones v. United States*, 2006 WL 44323, at *4 (W.D. Va. Jan. 9, 2006). Similarly, "illiteracy or sub-par intelligence does not foreclose the possibility" that verbal communication can accomplish a competent guilty plea. *See id.* On balance, low intelligence and slight learning disabilities alone are "insignificant" when compared with the "magnitude" of those handicaps that **do** constitute incompetency. *See Mendez v. Adams*, 2006 WL 436771, at *1 (N.D. Cal. Feb. 21, 2006).

As defined by federal law, the record reflects that Davidson's minimal education and mental limitations did not prevent a competent plea in this matter. At rearraignment, Defendant appeared lucid and coherent. He calmly and rationally responded to the District Judge during the plea colloquy, *see, e.g.*, Rearraignment at 25-27, freely asked questions, *see id.* at 8, 12, 15, and conferred with counsel on his own initiative, *see id.* at 28. At no time during the plea was Defendant unresponsive, unable to communicate effectively, or engaged in bizarre or unexplained behavior. Davidson further stated that he has no history of mental illness. *See id.* at 5. Indeed, the only evidence of incompetence is Defendant's self-serving self-evaluation. He provides no medical or expert analysis as to this issue.

Plainly, Defendant met the test for competency under these circumstances. Davidson stated that he understood the charges against him, and he displayed the capacity to consult with and assist

18

his attorney.  *See id*. at 8, 28; *Bordenkircher*, 696 F.2d at 466.  Defendant's behavior at rearraignment indicates that any limitations were simply too insubstantial to raise competency concerns–a position that is consistent with federal case law.  *See*, *e.g.*, *Mendez*, 2006 WL 436771, at *1.  Defendant's allegations and self-diagnosis are inadequate.  The record features nothing that would have prompted counsel or the District Court to investigate further Defendant's competency.[13]

In sum, Defendant's disabilities are unremarkable and would not ordinarily warrant a competency hearing under federal law.  *See*, *e.g.*, *id*.  Davidson's performance at rearraignment further confirms that he was competent to enter his plea.  *See*, *e.g.*, Rearraignment at 8, 12, 15, 25-28.  Thus, counsel's failure to pursue the competency issue was not unreasonable and did not prejudice Defendant.  *See Strickland*, 104 S.Ct. at 2064, 2068.  Besides failure to satisfy either *Strickland* prong, Sixth Circuit precedent suggests the District Court's prior determination that Defendant was competent to enter a plea precludes Defendant's ineffective assistance of counsel claim.  *See Devine*, 1999 WL 551400, at *3.  For all these reasons, the Court rejects Defendant's ineffective assistance claim.

### *Alleged Coercion and Manipulation*

Defendant additionally submits that counsel coerced and manipulated him into a guilty plea, in violation of his Sixth Amendment right to effective representation.  To prevail on an ineffective assistance of counsel claim in the context of a guilty plea, a defendant must demonstrate that his plea was effectively involuntary because a) counsel's representation fell below an objective standard of

---

[13]
Davidson's competency theory actually is a step beyond competency to plead.  He claims he was not competent to withstand the coercion and pressure applied to him in the plea context.  *See* DE #787, Memo in Support at 9.  Davidson himself is the lone source supporting this attenuated argument.

reasonableness and b) there is a reasonable probability that, but for counsel's deficient performance, defendant would not have pled guilty and would have proceeded to trial. *See Hill v. Lockhart*, 106 S.Ct. 366, 370 (1985). Here, Defendant essentially contends that he would not have pled guilty but for counsel's "coercion and manipulation."

On review, the Court finds that there is no credible evidence of coercion and manipulation. The initial § 2255 petition contains only bare allegations. Davidson repeatedly insists that he is the victim of counsel's "coercion and manipulation," but fails to recite any specifics. The § 2255 motion does not explain when, where, or precisely how counsel pressured and manipulated Defendant into his guilty plea. *See Blackledge v. Allison*, 97 S.Ct. 1621, 1630 (1977). The vague and conclusory allegations in Defendant's initial petition do not warrant habeas relief. *See id*.

Unlike the original § 2255 motion, there are *some* allegations in Defendant's reply brief and accompanying affidavit that merit closer examination. Namely, Davidson explains that he was: "scared and traumatized, and therefore, easy to manipulate;" told by counsel that he "had to plead or do a lot more time;" and promised by counsel that he would "receive no more than 151 months if he pled guilty." *See* DE# 827, Reply at 8; *See also* DE# 828, Davidson Affidavit ¶ 5. Although more specific, these allegations lack credibility on the record.

First, Defendant's failure to identify these specific threats and promises in his initial § 2255 petition is questionable. Nor did Defendant thoroughly detail these allegations in his subsequent submissions. Davidson's only reference to the promised 151 month maximum sentence is a single, passing remark in the final line of the reply brief. *See* Reply at 8. There is no discussion of the surrounding circumstances. This inattention is remarkable because the alleged promise would obviously be suspect. Defendant's failure to identify and thoroughly discuss these allegations in the

20

original § 2255 motion plainly raises credibility concerns.

More importantly, and fatally to the argument, Davidson's allegations contradict his former sworn representations to the District Court. Twice, Defendant acknowledged at rearraignment that he was not threatened, forced, or pressured into his guilty plea. *See* Rearraignment at 9-10. Defendant represented that he was not motivated by undisclosed promises or incentives, and Davidson further affirmed that he did not expect a specific sentence in exchange for his guilty plea. *See id.* at 8-9. He additionally acknowledged that he was satisfied with the advice and counsel of his attorney, and he displayed a willingness to trust and rely on counsel's representation at rearraignment. *See id.* at 8, 28. These solemn declarations in open court "carry a strong presumption of verity" and "constitute a formidable barrier" in subsequent collateral proceedings. *See Blackledge*, 97 S.Ct. at 1629.

In addition, Davidson's representations at rearraignment are consistent with the verified statements by defense counsel Eric Edwards. Edwards admits that he "recommend[ed]" the guilty plea, but was "very clear to [Defendant] that the choice to plead or proceed to trial was entirely his to make." *See* Edwards Affidavit at 1. Indeed, the timing of Davidson's guilty plea–the day before his scheduled trial date–suggests that counsel was prepared and willing to proceed to trial if Defendant so elected. Thus, the Court credits Edwards's affidavit. Defendant's vague allegation that counsel threatened him to plead guilty "or do a lot more time" is, at best, a fanciful re-characterization of counsel's recommendation

Lastly, Defendant's contention that he was "scared" by the criminal proceedings and "therefore easy to manipulate" is contradicted by the record. At rearraignment, Defendant actively participated in the plea colloquy and engaged both the District Judge and counsel. Defendant did

21

not simply acquiesce during the District Court's inquiry, but was willing to ask questions, request clarification, and confer with counsel. *See* Rearraignment at 8, 12, 15, 25-28. Davidson's interaction and assertiveness indicate that the proceedings, though surely grave, did not intimidate him.

In sum, the District Court in this matter properly determined that Defendant voluntarily entered his guilty plea. *See id*. at 29. The conclusory allegations of coercion in Defendant's initial § 2255 petition do not warrant relief. Although subsequent submissions present *some* specific allegations of coercion and manipulation, the Court rejects those allegations for the reasons outlined above. Because there is no credible evidence of coercion and manipulation, Davidson has failed to demonstrate professionally unreasonable representation or prejudice. Consequently, Defendant's ineffective assistance of counsel claim must fail in this context.

### C. Evidentiary Hearing

Defendant's initial § 2255 petition did not request an evidentiary hearing in this matter. The reply brief proposed a hearing to determine whether Davidson was incompetent at the time he entered his plea and whether Defendant instructed that his attorney file an appeal. The Court ordered an evidentiary hearing to address the latter issue, but the scope of the hearing did not extend to Defendant's incompetency claim. *See* DE #846, Order Granting Limited Evidentiary Hearing. No party appealed from the order setting that hearing and defining its scope.

A hearing is not required where the petitioner's allegations cannot be accepted as true because they are inherently incredible, refuted by the record, or conclusory. *See Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999); *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996). As to the competency issue, the Court finds a hearing unnecessary. Defendant's § 2255

claims are conclusory, incredible, and otherwise refuted by the record.  The Court needs no hearing to resolve this claim.  *See Blanton*, 94 F.3d at 235.

       *D.  Certificate of Appealability*

       A Certificate of Appealability may issue where a § 2255 petitioner has made a "substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. § 2253(c)(2).  This requires movant to demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 120 S.Ct. 1595, 1604 (2000).  The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement.  *See* 28 U.S.C. § 2253(c)(3); *see also Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001)(requiring an "individualized determination of each claim" in considering whether to grant a certificate of appealability).

       Defendant has not made a "substantial showing" as to any claimed denial of rights.  Each of his ineffective assistance of counsel claims plainly fails under the facts and arguments presented.  By not establishing "cause" and "prejudice" for failing to pursue a direct appeal, Defendant also procedurally defaulted the additional § 2255 arguments.   The clear hearing record also negates issuance of a certificate concerning the *Regalado* issue.

## V.  Recommendation

       For all of the reasons stated in this decision, the Court **RECOMMENDS** that:

       1) the District Court deny, with prejudice,  the motion to vacate, set aside, or correct sentence, *see* DE# 787; and

       2) the District Court refuse a Certificate of Appealability as to all issues.

       The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this

recommendation, issued under subsection (B) of said statute.  As defined by § 636(b)(1), Fed. R. Civ. P. 72(b), Fed. R. Crim. P. 59(b), and local rule, within ten days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court.

This the 7th day of September, 2007.

Signed By:

**Robert E. Wier**

**United States Magistrate Judge**