UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | Criminal Action No. 6: 05-30-DCR |
| | ) | Civil Action No. 6: 06-407-DCR |
| V. | ) | |
| | ) | |
| JAMES HENRY DAVIDSON, JR., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant/Petitioner. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Defendant/Petitioner James Henry Davidson Jr.'s ("Davidson") Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2255. According to local practice, the matter was referred to United States Magistrate Judge Robert E. Wier for the preparation of a Recommendation Disposition under 28 U.S.C. §636(b)(1)(B). On June 18, 2007, the Magistrate Judge held a limited evidentiary hearing on Davidson's claim of ineffective assistance of counsel. Thereafter, the Magistrate Judge recommended that Davidson's petition be denied and that a certificate of appealability not issue.

Davidson filed objections to the Magistrate Judge's Recommended Disposition on October 10, 2007. Having reviewed these objections, the record before the Court, and the relevant law *de novo*, this Court agrees with the Magistrate Judge's recommendations. Accordingly, Davidson's petition will be denied

## I.        Factual Background

On September 1, 2005, Davidson was charged in fifteen counts of a forty-three count

superceding indictment resulting from the United States' investigation into an extensive drug

conspiracy known as the "Kenny Day Organization." The relevant counts charged that Davidson

conspired with others to possess with intent to distribute 1,000 kilograms or more of marijuana

in violation of 21 U.S.C. §§ 841 and 846 (Count 2); engaged in money laundering with the

proceeds from the illegal drug activity (Count 4); conspired with others to influence an official

proceeding (Count 5); knowingly and intentionally distributed marijuana on several occasions

(Counts 7, 8, 15, 18, 20); knowingly and intentionally distributed marijuana within 100 feet o

a school (Count 13); knowingly possessed with intent to distribute over 100 kilograms of

marijuana (Count 22); and possessed twenty-nine firearms while subject to a domestic violence

order in violation of federal law (Count 34). The remaining four counts were forfeiture counts

involving the firearms and other property and proceeds allegedly related to the drug trafficking

conspiracy.

On November 14, 2005, Davidson plead guilty to all fifteen counts charged in the

Indictment. At his re-arraignment, Davidson acknowledged that his role in the drug conspiracy

primarily consisted of storing large amounts of marijuana in a secret room underneath his garage.

[Record No. 808, p.25] Additionally, in his motion for re-arraignment,[1] Davidson agreed that

the United States could prove the following facts beyond a reasonable doubt:

> I, James Henry Davidson, Jr., beginning in August, 2004, a date within the
> dates charged in Count 2 of the indictment, agreed to accept $1,000.00 per week

---

[1]        Davidson did not enter into a written plea agreement with the United States.

from Kenny Day in exchange for him storing marijuana in a secret room under my garage.  The garage is on property owned by me which is located in Clay County, Kentucky within the Eastern District of Kentucky.  This property is located within 1000 feet of the Burning Springs Elementary School.  Terry Holland wired the storage room so freezers could be utilized.  I along with Terry Holland, Kenny Day, and Steven "Skull" Davidson placed the freezers in the storage room for the specific and intended purpose of storing marijuana.

The marijuana came from various suppliers.  The marijuana would initially be delivered to Kenny day at his pawn shop.  Sometimes, Kenny would direct me to come to the pawn shop to pick up the marijuana to take to the storage house.  On other occasions, Terry Holland /or Skull Davidson would bring the marijuana to the storage house and place it in the freezers[.]  The marijuana was kept there until Kenny had a buyer.  Usually, Kenny would send Skull to pick up whatever amount was needed for the transaction.  There was over 1000 kilograms stored in the freezers from late August, 2004 until the remaining marijuana was located by law enforcement on July 15, 2005.

The marijuana stored in the freezers on my property was removed and was distributed to persons on or about August 26, 2004, September 21, 2004, November 24, 2004, January 13, 2005, and April 27, 2005 by members of the Kenny Day organization as stated in Counts 7, 8, 13, 15, and 20 of the indictment.  On April 9, 2005 and continuing through July 15, 2005, I, along with other members of the Kenny Day organization did possess in excess of 100 kg. of marijuana for the intended and specific purpose of re-selling the marijuana to distributors as alleged in Counts 18 and 22 of the indictment.

As to Count 4 of the indictment, I admit and agree that the United States could prove the elements of the charge beyond a reasonable doubt based upon the fact that the money to pay for the marijuana which was stored on my property in furtherance of the conspiracy was sent across state lines to certain suppliers.  The money paid to the suppliers consisted of proceeds from the sale of marijuana by the Kenny Day organization to distributors.  Furthermore, the proceeds of drug transactions were used to purchase real and personal property in Clay County, Kentucky.

As to Count 5 of the indictment, I admit and agree that the United States could prove each element of the charged offense beyond a reasonable doubt based upon the following facts.  After the arrest of Thomas Effler, Kenny Day was concerned that Effler would expose the organization.  Kenny directed me to obtain the phone number of Jennifer Garrison so he could talk to her about getting Effler's bond reduced.  He stated that money talks and that he would get the bond

-3-

reduced even if it took money to do it.  Kenny Day provided Loreda Smith $10,000 from drug proceeds that was to be used to post Effler's bond.

As to Count 34, the United States could prove the following facts beyond a reasonable doubt.  There was a Domestic Violence Order issued by the Circuit Court of Clay County, Kentucky in effect at the time of my arrest on this charge.  At said time, Mr. Davidson was in physical possession of a firearm which had traveled in interstate commerce.  Mr. Davidson further admits to possessing all the firearms listed in Count 34 by having same in his house at a time in which he was a person prohibited from so possessing them in violation of 18 U.S.C. §922(g)(8).  All of the firearms were manufactured outside of Kentucky.  Accordingly, Mr. Davidson admits and agrees to the forfeiture of the firearms pursuant to Count 43 of the indictment.

[Record No. 528]  At the conclusion of the re-arraignment, the undersigned found Davidson to

be "fully competent and capable of entering an informed plea." [Record No. 808] Further, the

undersigned concluded that Davidson's plea was knowing, voluntary and supported by an

independent basis in fact.  Accordingly, the Court accepted Davidson's guilty plea and adjudged

him guilty of all fifteen counts.

At the sentencing hearing held on February 22, 2006, the Court determined that the

applicable guideline range was 151 to 188 months, based on a total offense level of 34 and a

criminal history category of I.  After hearing arguments from counsel and carefully reviewing

all the factors set forth in § 3553, including the history and characteristics of the Defendant and

the need to protect the public, the Court sentenced Davidson to a term of imprisonment of 188

months (the upper end of the guideline range) and a term of supervised release of five years.

Davidson did not appeal his conviction or sentence, although he claims that he instructed

his trial counsel, Hon. Eric Edwards, to file an appeal on his behalf.  In his petition, he asserts

several claims for habeas relief.  First, he contends that his counsel provided ineffective

assistance by failing to perfect his appeal.  Second, he asserts that he did not knowingly and voluntarily enter a guilty plea because of coercion, lack of competency, and ineffective assistance of counsel.  Finally, Davidson claims that his sentence was unreasonable because: (1) the quantity of drugs was not proven; (2) he did not admit to the firearms and money laundering charges; (3) the "counts were not grouped properly" and "inflated the sentence"; and (3) he was entitled to a safety valve or minor role adjustment.

After reviewing Davidson's claims and the United States' response, the Magistrate Judge held an evidentiary hearing to address Davidson's claim that he instructed his attorney to file an appeal.  At the hearing, the Magistrate Judge appointed counsel for Davidson, and both Davidson and his former attorney testified.  However, the Magistrate Judge found Davidson's testimony and the affidavit in support of his petition were inconsistent and "painfully vague." [Record No. 879, p. 14]  In contrast, the Magistrate Judge found the testimony of Edwards to be "a detailed and coherent account that complimented the statements in his affidavit." [*Id*.]  Accordingly, the Magistrate Judge credited Edwards' testimony and concluded that Davidson never instructed Edwards to file an appeal on his behalf.

Because the Magistrate Judge concluded that Davidson did not instruct his attorney to file an appeal, he also found that most of Davidson's claims were procedurally defaulted.  In particular, the Magistrate Judge noted that Davidson had not alleged any other grounds to establish cause and prejudice and could not establish actual innocence because he candidly admitted his guilt in his petition. [*See* Record No. 787-2, p.15 (stating that "Davidson does not maintain he is innocent") (emphasis in original)]  However, the Magistrate Judge concluded that

Davidson's other claims of ineffective assistance of counsel (lack of competency and coercion at the time of the re-arraignment) were excepted from the default rule and addressed them on the merits. Ultimately, the Magistrate Judge determined that Davidson could not succeed on those claims and recommended that his petition be denied in full.

Davidson filed objections to the Magistrate Judge's Recommended Disposition on October 10, 2003, challenging only the Magistrate Judge's conclusion that he did not tell his attorney to file an appeal. [Record No. 883] He claims that he was merely confused during cross-examination and that he never wavered from his assertion that he told his attorney to appeal in the courtroom immediately following the sentencing. [*Id.* at p. 8, 10, 11]

## II.     Legal Standard

Under 28 U.S.C. § 2255, "[a] prisoner in custody . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255. In making such a petition, a prisoner may claim that the sentence was imposed in violation of the Constitution or federal law, that the court was without jurisdiction to impose the sentence, that the sentence was in excess of the maximum authorized by law, or that it is otherwise subject to collateral attack. *Id.* "To prevail on a § 2255 motion alleging constitutional error, the petitioner must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citations omitted). Additionally, "[t]o prevail on a § 2255 motion alleging non-constitutional error, the petitioner must establish a 'fundamental defect which inherently results in a complete miscarriage of

justice, or, an error so egregious that it amounts to a violation of due process.'" *Id*. (citations omitted).

### III.    Analysis

This Court must make a *de novo* determination of those portions of a magistrate judge's recommended disposition to which an objection is made.  28 U.S.C. § 636(b)(1)(C).  However, "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985).  Here, all of Davidson's objections relate to the Magistrate Judge's determination that Davidson's counsel was not ineffective because Davidson never instructed his attorney to file an appeal. [*See* Record No. 883]

To succeed on an ineffective assistance of counsel claim, a defendant must prove that his counsel's performance was deficient and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  "Ineffective assistance under *Strickland* is deficient performance, with performance being measured against an 'objective standard of reasonableness,' 'under prevailing professional norms.'" *Id*. (citations omitted).  A petitioner must then show that there is a reasonable probability that, but for counsel's inadequate performance, the results would have been different.  *Strickland*, 466 U.S. at 687.  The Court's scrutiny of counsel's performance is highly deferential, and counsel is strongly presumed to have rendered adequate assistance and have made all significant decisions in the exercise of reasonable professional judgment.  *Id.* at 689; *Bigelow v. Williams*, 367 F.3d 562, 570 (6th Cir. 2004).

In the context of an alleged failure to perfect an appeal, "it is 'professionally unreasonable' for a lawyer to fail to file an appeal when specifically instructed to do so." *Regalado v. United States*, 334 F.3d 520, 524 (6th Cir. 2003) (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000)).  However, absent specific instructions, an attorney is only required to consult with his or her client about the advantages and disadvantages of an appeal and the client's wishes. *Id*.  If, after consultation, a defendant fails to give express instructions to appeal, the defendant cannot meet the first prong of the *Strickland* test because he cannot show that his counsel's performance was deficient. *Id*. at 526.

In the present case, it is undisputed that Davison's attorney consulted with him concerning the possibility of an appeal.  Therefore, Davidson can only establish ineffective assistance if he specifically instructed his attorney to file an appeal on his behalf. *Id*. at 525 (quoting *Roe*, 528 U.S. at 478) ("If consultation has occurred, then 'counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal.'").

In his affidavit and on direct examination at the evidentiary hearing, Davidson claimed that he always wanted to appeal and that he expressly told his attorney to file an appeal immediately after the sentencing hearing.  According to Davidson, Edwards promised he would come to see Davidson a few days after the sentencing.  Davidson also asserts that he attempted to contact Edwards' office numerous times, but the office would not accept his calls.  However, on cross-examination, Davidson became unsure about the time and place of his request for an

appeal.  Davidson further testified that he might have told Edwards that "he wanted to get this over with" and would accept "whatever the judge gave [him]." [Record No. 864, p.26]

In contrast, Edwards consistently claims that Davidson never wished to appeal and just wanted to "do his time." [Record No. 816-2, p.2]  Edwards asserts that he never promised to come see Davidson after the sentencing, although he did speak with Davidson's sister, Irene, to confirm that Davidson did not wish to appeal.  According to Edwards, he believed that Davidson would regret his decision not to appeal, so he contacted Davidson's sister to be sure.  Edwards admits that his office does not always accept collect calls when he is not in the office due to the cost, but he asserts that his office has instructions to give him messages if any attempted collect calls are received.  Edwards testified that he did not receive any messages indicating a missed call from Davidson.

In his Recommended Disposition, the Magistrate Judge thoroughly and painstakingly reviewed the testimony and affidavits of the two witnesses and concluded that Davidson never instructed Edwards to file an appeal.  The Magistrate Judge noted that Davidson's testimony differed from the allegations in his affidavit regarding the timing and location of his alleged request for an appeal, while Edwards' testimony and affidavit were consistent and detailed. Accordingly, based on his observations at the hearing and the record before him, the Magistrate Judge concluded that,

> [t]he Court credits Edwards's testimony on this record.  Defendant's testimony and affidavit are painfully vague and, in some key respects, inconsistent. Davidson also displayed factual uncertainty at the hearing.  He could not confidently relate pivotal information – in a swearing match – regarding when or where he instructed counsel to file the appeal. Edwards, by comparison, provided a detailed and coherent account that complimented the statements in his affidavit.

> Edwards also described regular practices he followed with respect to discussion and implementation of appeal rights.  Further, the contemporaneous documentation confirms Edwards's version of events, including his clear understanding that Davidson wanted no appeal and Davidson's unmistakable awareness that he had only ten days to appeal and could have contacted the clerk if Edwards truly were acting unresponsively or disobediently.  As such, the Court finds, as a fact, that Defendant never instructed Edwards to appeal, but instead "affirmatively communicate[d]" to Edwards, both before and after the sentencing hearing, that he did not want to appeal.

[Record No. 879, p.14]

As noted previously, a district court must make a *de novo* determination of those portions of a magistrate judge's report and recommendation to which an objection is made.  28 U.S.C. § 636(b)(1)(C).  However, when a magistrate's findings and recommendations are based on an evaluation of the credibility of the witnesses, a district court is not required to re-hear the testimony to make a determination of the issues.  *United States v. Raddatz*, 447 U.S. 667, 675-76 (1980).  Rather, "[c]redibility determinations of the magistrate judge who personally listened to the testimony of a witness should be accepted by a district judge unless in his *de novo* review of the record he finds a reason to question the magistrate judge's assessment." *United States v. Brown*, 2007 U.S. Dist. Lexis 33521 *3 (E.D. Tenn. May 7, 2007) (citing *Blizzard v. Quillen*, 579 F. Supp, 1446, 1449 (D. Del. 1984) (applying deferential standard in habeas context under 28 U.S.C. § 636(b)(1)(B))).

After reviewing the record *de novo*, the Court finds no reason to question the Magistrate Judge's determinations of the witnesses' credibility in this instance.  The Magistrate Judge made clear and specific findings concerning the relevant testimony, and those findings are supported by the record.  Although Davidson claims that he was just confused and tricked on cross-

examination, the record reflects that he was unable to provide clear testimony regarding the most important issues: when, where, and in what terms he instructed his attorney to file an appeal. When contrasted with the consistent and thorough testimony of Edwards, this Court agrees with the Magistrate Judge's determination that Davidson's testimony was incredible. Therefore, the Court also finds that Davidson did not expressly instruct Edwards to file an appeal, and thus he cannot meet the first prong of the *Strickland* test. *See Regalado*, 334 F.3d at 526; *Roe*, 528 U.S. at 478 ("If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal.").

Additionally, although Davidson did not object to the Magistrate Judge's conclusions regarding his competency and the allegations of coercion at his re-arraignment, this Court has reviewed those claims *de novo* and agrees with the Magistrate Judge's conclusions. First, with regard to Davidson's competency to enter a guilty plea, the Court specifically found at the time of re-arraignment that he was competent, and Davidson has not presented any allegations sufficient to establish incompetency under federal law. Davidson's claims that he lacks education and "comprehensive abilities of a complex nature" are simply insufficient to show that his counsel was constitutionally required to request a competency evaluation in light of this Court's finding that he was competent at the time of his guilty plea. *See Devine v. Commonwealth*, 1999 U.S. App. LEXIS 16980, at *10 (6th Cir. July 20, 1999) ("This court has previously inferred that a finding that a defendant was competent to enter a plea agreement

precludes a finding that the defendant's counsel was ineffective for not pursuing the competency issue.").

Further, Davidson has not presented a credible claim that he was coerced into entering his guilty plea on the eve of trial. Rule 11 of the Federal Rules of Criminal Procedure requires that a district court verify that a defendant's plea is voluntary and that the defendant understands his or her applicable constitutional rights, the nature of the crime charged, the consequences of the guilty plea, and the factual basis for concluding that the defendant committed the crime charged. *United States v. Goldberg,* 862 F.2d 101, 106 (6th Cir. 1988); Fed. R. Crim. Pro. 11. In *Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999), the Sixth Circuit held that a trial court's proper plea colloquy cures any misunderstandings that a defendant may have about the consequences of a plea.

Here, Davidson contends that his counsel told him he had to plead guilty to avoid a longer sentence and promised him he would receive a maximum sentence of 151 months. These allegations *directly* conflict with his sworn testimony at the time of the re-arraignment. In fact, the Court engaged in an extended discussion with Davidson regarding any promises or coercion because Davidson plead guilty without the benefit of a plea agreement. [Record No. 808, p. 8-10] The Court verified that no promises or threats had been made, and that Davidson understood the sentencing procedures including maximum penalties and the preparation of a presentence report. [*Id*. at p. 8-14] In response, Davidson repeatedly asserted "Yes, I understand that." [*Id*.] Accordingly, Davidson's claim that he was coerced and did not understand his potential sentence must fail.

### IV.     Evidentiary Hearing

As noted above, the Magistrate Judge afforded Davidson an evidentiary hearing on the issue of whether he instructed his counsel to file an appeal.  This Court has adopted the Magistrate Judge's credibility determinations with regard to that hearing, and thus is not required to re-hear the testimony to make a *de novo* determination.  *See Raddatz*, 446 U.S. 680-81.

Additionally, Davidson has not demonstrated any facts that, if fully developed, could lead the Court to find that habeas relief is appropriate on his lack of competency and coercion claims in connection with his guilty plea.  *See Lott v. Coyle*, 261 F.3d 594, 602 (6th Cir. 2001) ("A district court may, in the context of a habeas proceeding, permit discovery, provided that the habeas petitioner presents specific allegations showing reason to believe that the facts, if fully developed, may lead the district court to believe that federal habeas relief is appropriate.").  Accordingly, the undersigned agrees with the Magistrate Judge's conclusion that an hearing is not warranted on Davidson's remaining claims.

### V.     Certificate of Appealability

Finally, the Court also finds that a certificate of appealability should not issue in this case on any of Davidson's claims.  To be entitled to a certificate of appealability, a petitioner must demonstrate that "jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Here, Davidson's claims plainly fail on the merits, and the Court does not believe that a reasonable jurist would find this assessment debatable or wrong.

**VI.    Conclusion**

Accordingly, having reviewed the Magistrate Judge's Recommended Disposition, as well as Davidson's objections, the record, and the applicable law *de novo*, it is hereby

**ORDERED** as follows:

1.      United States Magistrate Judge  Robert E. Wier's Recommended Disposition [Record No. 879] is **ADOPTED** and **INCORPORATED** by reference.

2.      Davidson's objections [Record No. 883] to the Magistrate Judge's Recommended Disposition are **DENIED**.

3.      Davidson's motion to vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255 [Record No. 787] is **DENIED**.

4.      A Certificate of Appealability shall not issue because Davidson has not made a substantial showing of the denial of any substantive constitutional right

5.      Davidson's civil action filed pursuant to 28 U.S.C. § 2255 is **DISMISSED** and **STRICKEN** from the Court's docket.

This 17th day of January, 2008.



Signed By:
*Danny C. Reeves*  DCR
United States District Judge